# RICHARD POLEHN v. DEPARTMENT OF REVENUE

Plaintiff appeared in propria persona.

Defendant appeared by and through Glen V. Sorensen, Assistant Attorney General, Salem.

Decision part for plaintiff and part for defendant rendered May 1, 1975.

CARL N. BYERS, Judge pro tem.

Plaintiff appeals from an order of the Department of Revenue, No. VL 74-439, dated September 10, 1974, upholding the assessed value of $23,700 for the subject property as of January 1, 1973, as established by the Clackamas County Board of Equalization. Plaintiff, who appeared in propria persona, maintained in his opening statement that there were two issues before the court: (1) whether the property was assessed in excess of its true cash value; and (2) whether it was uniformly assessed in comparison with like properties. Mr. Glen V. Sorensen, Assistant Attorney General, representing the Department of Revenue, disputed that

uniformity of assessment was in issue. However, the court construes paragraph VI of plaintiff's complaint as raising the issue of uniformity and the allegations therein are admitted by the defendant's answer. Accordingly, the court has considered both issues in arriving at its decision.

A brief summary of the evidence adduced by the parties is as follows: Plaintiff's first witness was Mr. Tom Seal. Mr. Seal is a real estate broker and an appraiser, holding the designation of SREA and has lived in the area for 12 years. He presented five sales of comparable properties located near the subject property. These sales, all of which were identified by their tax lot number, were analyzed by Mr. Seal on the basis of the per acre value realized upon sale. Based upon these sales, he expressed his opinion that the subject property was worth $1,500 per acre.

On cross-examination, Mr. Seal admitted that he had not verified the sales and was not sure whether the comparable sales were restricted to one residence per tract. He indicated that he had made no adjustments to the comparable sales because he felt they were comparable in all respects. Mr. Seal also conceded that the comparable sales would cost more to develop than the subject property to the extent that they had less road frontage.

Mr. Donald F. Polehn, the plaintiff's son, testified only to identify Plaintiff's Exhibit 1, which is a study and comparison of the assessed values of the subject property and surrounding like properties. The court accepted plaintiff's offer of Exhibit 1 over the defendant's objections subject to a later determination of whether uniformity of assessment was an issue before the court. Since the court has determined that uniformity is in issue by virtue of the pleadings, the exhibit has been received as evidence.

Defendant's single witness was Mr. Bill Padrick, an experienced employe of the assessor's office. Mr. Padrick described the subject property as 7.27 acres of level land with a "prime view" of Mt. Hood in a rapidly changing neighborhood. The subject property has roads on three sides and is ideal for development.

Mr. Padrick used three of the same comparable sales used by the plaintiff, as well as others, all of which he felt were inferior in quality and development to the subject. For example, his comparable sale No. 1, which sold for $1,812 per acre, is subject to a 40-foot power line easement, has a poor view and is subject to water restrictions. Mr. Padrick indicated that the cost of development for roads and water and the zoning restrictions on all the comparable sales make the subject property a much better property.

Mr. Padrick valued the subject property as a single homesite with the "potential" for five homesites. He added an increment for the potential development because, although the property was not platted as of the assessment date in question, the plaintiff had applied for the platting and it appeared that it would be approved. Consequently, Mr. Padrick assigned a value of $5,500 to one acre, $3,500 to each of four acres, and $2,500 per acre for the remaining 2.27 acres, for a total of $25,180. Correlating and adjusting his comparable sales, he adjusted his total value down to $23,700 for an indicated value of $3,260 per acre.

The comparable sales used by both parties are all substantially inferior to the subject property. Consequently, the court can give little weight to the testimony of Mr. Seal who made no adjustments to those sales in arriving at his opinion of value. However, the court also finds that it cannot completely accept Mr. Padrick's conclusions, which were admittedly based on "arbitrary adjustments," at their face value.

Defendant made no showing of the cost of development or how the differences in view, water or platting influenced market value. It might be acceptable or necessary in some instances to base adjustments for such factors upon "experience in the field" or the appraiser's "judgment." However, where adjustments assume major proportions they must in turn be explained and supported by evidence. Defendant's comparable sale No. 3, which Mr. Padrick relied on most heavily because it had the least adjustments, was adjusted from $1,750 per acre to $3,252 per acre, approximately 85 percent. Where such large adjustments are not supported by comparable sales for the adjusted value, they lose their persuasiveness.

It appears to the court that the defendant's witness relied too heavily upon the fact that the subject property, which is now platted, has a significant advantage over other unplatted properties which are subject to severe use restrictions. There was no evidence that the comparable properties were not equally amenable to platting or subdivision on the assessment date in question. The significance of the platting, which took place shortly after the assessment date in question, has only subsequently manifested its impact upon market value. On the other hand, as Mr. Padrick pointed out, the subject property is obviously superior to the comparable sale properties in several respects. Consequently, the court finds that the true cash value of the subject property as of January 1, 1973, was $2,500 per acre, or a total true cash value of $18,175.

The plaintiff failed to sustain his burden of proof with regard to the issue of uniformity. ORS 305.427. There was no evidence to show that his list of "comparable" properties were in fact comparable. In this regard, plaintiff's case suffers from the same failings as the defendant's, since the undisputed evidence submitted by both sides revealed significant differences

between the properties. Accordingly, the defendant's Order No. VL 74-439 is set aside and held for naught; the assessor and tax collector of Clackamas County shall amend their rolls as required by the decision and make any necessary repayment of taxes overpaid, if any, with interest thereon, pursuant to ORS 311.806 and 311.812. Each party shall bear its own costs.